IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

REY RODRÍGUEZ-AYALA,

    Plaintiff,

    v.

COMMONWEALTH OF PUERTO RICO, et al.,

    Defendants.

CIVIL NO.: 07-1157 (MEL)

**OPINION AND ORDER**

**I.   PROCEDURAL POSTURE**

On February 26, 2007, plaintiff Rey Rodríguez-Ayala ("Rodríguez-Ayala") filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Commonwealth of Puerto Rico and the Secretary of the Department of Corrections and Rehabilitation, Miguel Pereira-Castillo ("Pereira-Castillo"). (Docket No. 2.) All claims against the Commonwealth of Puerto Rico were subsequently dismissed due to its immunity under the Eleventh Amendment. (Docket No. 21.) Pereira-Castillo filed his answer on December 8, 2009. (Docket No. 23.)

On May 7, 2010, plaintiff – now represented by counsel – filed an amended complaint against Pereira-Castillo in his personal capacity, his wife and the conjugal partnership they comprise, as well as the unnamed director of the Bayamón Correctional Institution 308 and the officers or guards at said entity that allegedly assaulted plaintiff, asserting claims under Section 1983 based on violations of the Eighth and Fourteenth Amendments, and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141. (Docket No. 39.) Plaintiff has since identified the guards in question as

Manuel López-Jiménez ("López-Jiménez") and Félix Serrano-Cruz ("Serrano-Cruz"), who is deceased, and amended the complaint again (the "second amended complaint") accordingly.[1] (Docket Nos. 58; 64.)

On November 3, 2010, all claims against unidentified parties or generically named defendants were dismissed. (Docket No. 67). All claims against Miguel A. Pereira Castillo were also dismissed on said date. (Docket No. 68). In addition, the Eighth Amendment claims against López-Jiménez and and Serrano-Cruz were dismissed as well. (Docket No. 68). Therefore, the sole remaining claims are those against the prison guards under Section 1983 based on violations of the Fourteenth Amendment and Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141. (Docket No. 58).

Pending before the court is López-Jiménez's "Motion to Dismiss Pursuant to Stipulation made by Plaintiff Rey Rodríguez-Ayala" and plaintiff's response in opposition. (Docket Nos. 79 and 82.) In essence, López-Jiménez argues that pursuant to a stipulation of settlement entered in a parallel tort case in the Commonwealth of Puerto Rico, Court of First Instance, Superior Court, Bayamón Part, ("the settlement stipulation") plaintiff's federal case ought to be dismissed. (Docket No. 86-1). The parallel state case also involves allegations that plaintiff was assaulted while incarcerated at the Bayamón Correctional Institution 308.[2]

An evidentiary hearing was held on September 15, 2011 which included the testimonies of plaintiff Rodríguez-Ayala and his attorney in state court, Mariam Berríos-Sánchez ("Berríos-

---

[1]As plaintiff failed to identify the director of the Bayamón facility, all claims against him or her have been dismissed. (See Docket No. 67.)

[2]"Though Puerto Rico enjoys a unique commonwealth status, it is the 'functional equivalent of a state for purposes of full faith and credit' and therefore we sometimes refer to its courts as 'state courts' and its law as 'state law'. Núñez Colón v. Toledo Dávila, 648 F.3d 15, 19 n.1 (1st Cir. 2011) (citation omitted).

2

Sánchez") (Docket No. 102). At the conclusion of said hearing, defense counsel raised an additional argument not explicitly articulated in his written motion to dismiss, namely that regardless of the settlement stipulation, plaintiff is precluded from pursuing the federal case under the *res judicata* doctrine.

## II.  LEGAL ANALYSIS

### A.  The settlement stipulation

On April 28, 2011, judgment was entered in the parallel state case stating in its pertinent part as follows: "The attorneys submitted the case for the record. The court has set the damages of co-plaintiff Rey R. Rodríguez Ayala at the sum of $5,000. The Commonwealth of Puerto Rico must pay $2,500, and the Correctional Health Services Corporation, $2,500. The court GRANTS the suit for the sum of $5,000 to Rey R. Rodríguez Ayala, without costs, expenses, or attorney fees." (Docket No. 86-2).[3]

In May, 2011, however, counsel for the parties in the parallel state case executed a settlement stipulation. (Docket No. 86-1). The stipulation provides that the payment of $2,500 by the Commonwealth of Puerto Rico and of $2,500 by Correctional Health Services Corporation shall not imply "acceptance of any kind of negligence by the Commonwealth and/or officials, agents, and employees, and/or Correctional Health Services Corp." (Docket No. 86-1 at ¶1). More importantly, the stipulation also reads as follows in one of its clauses (the "Sixth Clause"):

> With the payment by the defendant appearing herein of the sum offered in settlement, and the acceptance thereof by the plaintiff, the plaintiff desists, with prejudice, all past, present and future, state and federal administrative, judicial and extrajudicial claims that it may have against the Commonwealth of Puerto Rico, the Corrections Administration, its officials, agents, and employees, and Correctional Health

---

[3] The complaint in state court includes other parties that are not part of the federal case.

>Services, Corp., as a result of the facts alleged in the above-captioned complaint, and it terminates this suit with prejudice.

(Docket No. 86-1 at ¶6).

Thus, although the judgment in state court "grants the suit for the sum of $5,000" to plaintiff, the subsequent settlement stipulation indicates that "the parties have agreed and stipulated the sum of ...$5,000 to settle the claim made in the suit by the plaintiff against the defendant the Commonwealth of Puerto Rico; the Corrections Administration on its own behalf, representing its officials, employees, and agents in their official and personal capacities; and Correctional Health Services Corp." (Docket No. 86-1 at ¶1). No evidence has been brought to the attention of the court indicating that the judgment at the state level was amended or modified to reflect the settlement stipulation.

At a hearing held on September 15, 2011, counsel Berríos-Sánchez testified that on the day that judgment was entered in state court, the case had been called for a settlement conference. No trial or evidentiary hearing was held in state court. Instead, Berríos Sánchez indicated that she asked Rodríguez Ayala whether he consented to settle his state case for $5,000, that plaintiff agreed to do so, and that she never discussed with plaintiff the possibility of settling his federal claims. Plaintiff also testified that the disposition of his federal case was never discussed with Berríos-Sánchez.

More importantly, Berríos-Sánchez testified that she never actually read the Sixth Clause of the settlement stipulation and that the only reason for signing it was that she was told by government counsel Karina Murati that the Puerto Rico Treasury Department would authorize the disbursement of the $2,500 that the Commonwealth of Puerto Rico had to pay only if the settlement stipulation was executed. According to a motion filed by Berríos-Sánchez in state court, counsel "Karina

4

Murati informed us that in order to issue the check to Mr. Rey Rodríguez, her client demanded an agreement of stipulation, not a judgment by stipulation, which we oppose." (Docket No. 105-1 at ¶6 (certified translation of Exhibit 1 at the hearing held on September 15, 2011)).

At the outset, it is noted that both the federal and state complaints contain a cause of action for negligence, that is a tort claim under Puerto Rico law, against the officers that assaulted plaintiff on July 1, 2006 while in custody at the Bayamón Correctional Institution 308.  It is also undisputed that counsel Berríos-Sánchez discussed with her client, Rodríguez-Ayala, settling his state claims for $5,000 and that plaintiff authorized Berríos-Sánchez to settle his state claims for said amount. "A compromise has, with regard to the parties, the same authority as *res judicata*...." P.R. Laws Ann., tit. 31, §4827.  Therefore, the settlement stipulation executed between the parties in May 2011 is binding with respect to the state claims.[4]  Accordingly, plaintiff's cause of action pursuant to Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann., tit. 31, §5141, is hereby DISMISSED WITH PREJUDICE.

A different situation, however, arises with respect to plaintiff's federal claims.  In order to analyze the effect, if any, of the settlement stipulation on plaintiff's pending Section 1983 claims, it is useful to lay out some basic principles regarding a lawyer's authority to enter into settlement agreements on behalf of his clients.

> [A]n attorney, merely by virtue of his employment, lacks authority to compromise because the decision to settle is the client's to make, not the attorney's. However, an attorney may make a binding compromise on behalf of his client if the client has

---

[4]Although López-Jiménez is not explicitly mentioned in the settlement stipulation, its introductory paragraph reads that among the signatory parties are the Commonwealth of Puerto Rico and the Corrections Administration, representing its officials, employees, and agents in their official and personal capacities. (Docket No. 86-1).  Thus, López-Jiménez, who has been explicitly sued in the amended complaint in the federal forum and generically sued in the amended complaint in the state forum as one of the two officers referred to as John Doe and Richard Doe, is encompassed by this settlement agreement.

authorized him to do so. While there is a presumption that a settlement entered into by an attorney has been authorized by the attorney's client, rebuttal of the presumption renders any purported settlement ineffective.

Michaud v. Michaud, 932 F.2d 77, 80 (1st Cir. 1991).[5]

In those circumstances, such as the one presently before the court, where it is unclear whether the client authorized an attorney to settle, the court should hold an evidentiary hearing. Rivera Olmo v. State Insurance Fund of the Commonwealth of Puerto Rico, 206 F.Supp.2d 226, 229 (D.P.R. 2002). At the evidentiary hearing held on September 15, 2011, it became clear that Rodríguez-Ayala and his attorney in state court, Berríos-Sánchez, never discussed his pending federal case nor causes of action under federal law on April 28, 2011 when the state case was called for a settlement conference in the local forum. Although it is troubling that approximately one month afterwards Berríos-Sánchez executed a settlement stipulation without reading it in full (particularly the Sixth Clause which states that "plaintiff desists, with prejudice, all past, present and future, state and federal administrative, judicial and extrajudicial claims that it may have against the Commonwealth of Puerto Rico, the Corrections Administration, its officials, agents, and employees..."), the fact of the matter is that both Rodríguez-Ayala and Berríos-Sánchez have stated under oath that plaintiff never authorized the settlement of his federal claims. Moreover, according to Berríos-Sánchez's testimony, she never showed the settlement stipulation to her client before signing it. Therefore, Berríos-Sánchez never had authority to settle plaintiff's federal claims.[6]

---

[5]At this juncture, the court applies federal law rather state law because the issue at hand is whether an attorney has authority to settle a civil action brought under federal law, rather than under state law. Id. at n.3.

[6]Berríos-Sánchez's failure to carefully read the entire settlement stipulation, show it to her client and discuss it thoroughly with plaintiff before signing it cannot be excused by merely stating that "the stipulation signed was exclusively aimed at processing the check corresponding to the plaintiff...." (Docket No. 105-1 at ¶9). An attorney has an ethical and professional obligation to maintain his client well informed of any significant events of his case, and even more so when at issue lies a settlement agreement that may cause the dismissal of a case. P.R. Laws Ann., tit. 4 Ap. IX

6

"[T]he decision to settle litigation belongs to the client, not the lawyer. The rule logically implies that a settlement agreement entered into by an attorney is ineffective if the attorney did not possess actual authority to bind the client...." Malavé v. Carney Hospital, 170 F.3d 217, 221 (1st Cir. 1999) (citations omitted). In light of the evidence that transpired during the hearing, it is evident that the settlement stipulation entered by the parties in the parallel state case cannot serve as the basis to prompt the dismissal of the federal claims in this court. Hence, López-Jiménez's motion to dismiss the federal claims presently pending before this court based on the settlement stipulation entered in local court is DENIED.

      B.    **Res judicata and the state court judgment**

Although not explicitly articulated in his motion to dismiss, at the hearing counsel for López-Jiménez urged the court, in the alternative, to consider the effects of the state court judgment on the pending case in this court. Oddly, even though the state court's pronouncement reads as a consent judgment, the settlement stipulation signed afterwards rings to the tune of an agreement to dismiss all claims without adjudicating the merits of the underlying claims. (See Docket Nos. 86-1 and 86-2). To further complicate matters, the evidence at the hearing held before this court on September 15, 2011 makes it clear that it is uncontroverted that on April 28, 2011, the case in state court was not called for a trial or an evidentiary hearing, but rather for a settlement conference. Nonetheless, the state court judgment has remained unaltered. (See translation of Joint Exhibit III at the hearing held on September 15, 2011, attached to this opinion and order, in which the Court of First Instance, Bayamón Part, reiterates on May 26, 2011 that judgment was entered on April 28, 2011).

As previously mentioned, the state court judgment reads in its pertinent part as follows: "The

---

C.19.

court has set the damages of co-plaintiff Rey R. Rodríguez Ayala at the sum of $5,000. The Commonwealth of Puerto Rico must pay $2,500, and the Correctional Health Services Corporation, $2,500. The court GRANTS the suit for the sum of $5,000 to Rey R. Rodríguez Ayala, without costs, expenses, or attorney fees." (Docket No. 86-2) The issue, then, is whether a judgment in which plaintiff appears to have prevailed regarding his local tort claim has preclusive effects on his Section 1983 cause of action based on violations to the Fourteenth Amendment.

Under the *res judicata* doctrine,

> A valid and final personal judgment is conclusive between the parties, except on appeal or other direct review, to the following extent: (1) If the judgment is in favor of the plaintiff, the claim is extinguished and merged in the judgment and a new claim may arise on the judgment; (2) If the judgment is in favor of the defendant, the claim is extinguished and the judgment bars a subsequent action on that claim; (2) A judgment in favor of either the plaintiff or the defendant is conclusive, in a subsequent action between them on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

Restatement of Judgments 2d §17. This doctrine seeks "to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." Apparel Art Intern. v. Amertex Enters. Ltd., 48 F.3d 576, 583 (1st Cir. 1995). "Once there has been an adjudication on the merits ... all claims which are 'part of the same cause of action' are extinguished, whether or not actually asserted in the original action." Kale v. Combined Ins. Co. of America, 924 F.2d 1161, 1164 (1st Cir. 1991).[7]

While "federal law determines whether an earlier judgment, rendered in a federal court, bars the maintenance of a subsequent federal court action, In re Colonial Mortgage Bankers Corp., 324

---

[7] *Res judicata* is also known as claim preclusion. Mala v. Palmer, 755 F.Supp. 2d 386, 391 (D.P.R. 2010).

F.3d 12, 16 (1st Cir. 2003)[8], "we must apply state law when deciding the *res judicata* effect of a state court judgment in federal court." Núñez Colón v. Toledo Dávila, 648 F.3d 15, 19 at n.2 (1st Cir. 2011). "In determining the preclusive effect of a judgment [from a state court of Puerto Rico] in federal court ... the question is whether courts in [Puerto Rico] would ascribe preclusive effect to the judgment." Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000). Turning, thus, to Puerto Rico law, we find that "[i]n order that the presumption of *res judicata* may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann., tit. 31, §3343.

> Puerto Rico courts do not interpret the phrase "perfect identity" literally. For *res judicata* purposes, "[t]he thing corresponds basically to the object or matter over which the action is exercised." The test for identity of "things" is whether a decision in the second action may contradict the prior adjudication. Similarly, "cause" refers to the main ground or origin of the action.

Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000) (citations omitted).

The parties are not in dispute that the complaints at the federal and state level revolve around the same incident and that plaintiff and co-defendant López-Jiménez, although the latter was named only generically in the complaint filed at the state forum, are parties that find themselves at opposite ends of the street in both cases. In the federal case at bar, plaintiff claims in his second amended complaint that on July 1, 2006, while in custody at the Bayamón Correctional Institution 308 as a pretrial detainee, he was assaulted – without justification – by two officers, defendants López-

---

[8] In the context of comparing two federal suits, "[t]he elements of a *res judicata* defense are: (1) a final judgment on the merits in an earlier proceedings, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicalilty between the parties in the two actions." Rodríguez-Torres v. Government Development Bank, 2011 WL 1363798 (D.P.R. 2011) (citing González v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994).

Jiménez and Serrano-Cruz. (Docket No. 64, ¶ 10.) As a result of the attack, plaintiff suffered bodily injuries, including an open wound over his right eyebrow that required six stitches and caused loss of vision in his right eye and severe headaches. (Docket No. 64, ¶ 11.) Plaintiff contends that the attack was orchestrated by correctional facility supervisors, noting that it took place fifteen minutes after a correctional officer had visited plaintiff to inform him that he was to be transferred due to rumors that he was going to be killed. (Docket No. 64, ¶ 12.) Plaintiff claims that such rumors were false. (Docket No. 64, ¶ 13.)

The amended complaint filed at the Court of First Instance in Bayamón, also claims, *inter alia*, that on June 1, 2006 he was on section 308 of a correctional facility in Bayamón, Puerto Rico, when an individual by the name of Sergeant Villegas appeared with two officers. (Docket No. 91-1 at ¶¶6, 7). Plaintiff was told that he had to be relocated, but shortly thereafter, the officers brought plaintiff out of his cell half-dressed, handcuffed him, and "started hitting him, causing bruises and hematomas on his head, arms, ribs, chest, and legs, as well as a wound on his right eyebrow, which required six (6) stitches." (Docket No. 91-1 at ¶¶8, 9). As a result, plaintiff claims that he has lost sight in his right eye, suffers from headaches, and has undergone psychological therapy. (Docket No. 91-1 at ¶10).

A review of both complaints leads the court to conclude that there is identity of things (an assault to an inmate on July 1, 2006 at section 308 of a correctional facility in Bayamón, Puerto Rico), of cause (officers or guards beating the inmate), and persons (the inmate being plaintiff in both actions, while López-Jiménez being generically referred to in the state action and specifically sued in the federal case). The question, then, is whether the judgment entered on the negligence claim in state court precludes seeking damages for the same assault under Section 1983. The answer

10

to this inquiry is in the affirmative. See Black v. North Panola School District, 461 F.3d 584 (5th Cir. 2006) (claim preclusion barred plaintiff, who won on claims under the Mississippi Tort Claims Act for negligence by school officials in failing to protect her daughter against sexual assault, from seeking damages for the same assault under Section 1983); Ruple v. City of Vermillion, 714 F.2d 860, cert. denied 465 U.S. 1029 (due process claim under Section 1983 in federal court related to a discharge that gave rise to the original contract and defamation case in state court was barred by summary judgment entered against plaintiff in the first action); Stockton v. Lansiquot, 838 F.2d 1545 (11th Cir. 1988) (state court judgment in a wrongful death case precluded plaintiff from pursuing a subsequent action under Section 1983 against same defendants on same claim).  Hence, it is clear that

> [u]nder the command of the full faith and credit statute, 28 U.S.C. § 1738, state-court judgments establish claim and issue preclusion, as measured by state law, in subsequent federal civil rights litigation.  Preclusion can be defeated by showing that the state court did not afford a full-and-fair opportunity to litigate, but the test seems to be a due process test that would defeat preclusion in any setting.

Wright & Miller, Federal Practice and Procedure, § 4471.2.

Even though no trial or evidentiary hearing was held in state court, that in and of itself is not indicative that Rodríguez-Ayala did not have a full and fair opportunity to litigate his claims in said forum.  A settlement conference was held in state court and he voluntarily opted to settle his tort claim rather than pursuing the matter to trial.  Furthermore, the fact that plaintiff has asserted different theories of liability in the state and federal cases is irrelevant.  State courts have concurrent jurisdiction to entertain lawsuits under Section 1983.  McIntosh v. Antonino, 71 F.3d 29, 36 (1st Cir. 1995).

One last matter needs to be addressed:

> "Under Puerto Rico law, claim preclusion requires a prior judgment on the merits that is, in the authoritative Spanish, 'final y firme' (officially translated as 'final and unappealable'). See WorldWide Food Distribs., Inc. v. Colón Bermúdez, 133 P.R. Dec. 827, 831, 1993 WL 840035 (1993) (official trans. at 4). This phrase makes manifest that a commonwealth court judgment cannot be accorded preclusive effect until all available appeals have been exhausted (or the time for taking them has expired). See Vega Arriaga v. J.C. Penny, Inc., 658 F.Supp. 117, 120-21 (D.P.R. 1987)."

Cruz v. Melecio, 204 F.3d 14, 20 (1st Cir. 2000). No evidence has been brought to the attention of the court to suggest that the judgment entered in state court on April 28, 2011 has not become final and unappealable.

WHEREFORE, in light of the foregoing, López-Jiménez's motion to dismiss is GRANTED as to plaintiff's Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141 due to the settlement stipulation that he filed in the parallel state case. With respect to the plaintiff's remaining cause of action pursuant to 42 U.S.C. § 1983, however, the same is DISMISSED on claim preclusion grounds, not on the basis of the settlement agreement entered into between the parties in the local forum. Hence, the complaint in this case is hereby DISMISSED with prejudice. Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 28th day of September, 2011.

s/Marcos E. López  
U.S. MAGISTRATE JUDGE